20-3061-CR Good afternoon again, Your Honor. This is Adam Mueller on behalf of Ms. Maxwell. I would like to start by acknowledging a constraint, really, on what my argument can be today. And my constraint is that the criminal protective order prevents me from disclosing to the panel of this court, which I understand is the panel in case 20-2413, the civil case, prevents me from disclosing to this court the nature of the new information we have asked to share with Judge Prescott. The court will, of course, notice that our motion to consolidate, which we filed in both cases, the copy of the motion filed publicly in 20-2413 is heavily redacted for that reason. And so the fact that I have had to make those redactions and the fact that I'm constrained in what I am allowed to say to this court, what I understand I'm allowed to say, is reason itself that these cases should be consolidated because all we are asking is that this court, as the supervisory court of the Southern District of New York, be in a position where it can make an informed decision. Judges regularly, regularly consider all the information a party contends is relevant to their claims and arguments. The court might ultimately conclude that the information is not relevant or is not persuasive or disregarded. But I'm unaware of other situations in which one court says, you cannot share this information with another court. And that's all we're asking here. We're not asking to make anything public. We're asking to share, under seal with Judge Prescott and under seal with this court, the information we think is relevant to Judge Prescott's determination of whether the deposition material that we just discussed should be unsealed. And going forward, whether other materials should be unsealed or whether the unsealing process, in fact, should be stayed pending the resolution of the criminal case. And we don't think we can make that argument fairly without the ability to share, under seal, the information we've learned. What has been publicly released that Judge Maven has referred to in her order is that Court 1 granted an application from the government for a subpoena to a recipient. Court 2 denied an application from the government to issue a subpoena to a recipient. I cannot tell you publicly what the identity of Court 1 or Court 2, I don't believe. And I certainly can't tell you the identity of the recipient. And we contend that information, in addition to other information, is relevant to Judge Prescott's ruling. And the situation I am trying to avoid with the motion to consolidate is this. If this court does not consolidate the matters, and this court were to affirm Judge Prescott's decision unsealing the deposition material on day one, and two weeks later, a different panel of this court decides that Judge Maven committed error in refusing our request to modify the protective order and share with Judge Prescott information that Judge Prescott has said she will consider should we be allowed to share it. By that point, it could be too late. Because the deposition material could be released, and Judge Prescott will never be given the opportunity to decide whether that information should have erred on her decision. And so we're just asking for a fair opportunity to present these arguments to this court. This court may not be persuaded. I understand that. We don't expect that just because of the motion to consolidate, we win. But we are just asking for a fair opportunity to make our argument. And the proceedings in the district court, where we have four district courts reaching different decisions, and one district court, Judge Prescott, doing so without the relevant information, is what we're trying to rectify. We do not just have our day to make the relevant argument to the judges. I also think, apart from consolidation being the only way to ensure a consistent result, I think it's also the most efficient way to resolve these cases at this point. The briefing in the criminal case is completed. It was completed, I think, last week, maybe one week before. I filed a lot of briefs of late, and it's hard to keep them all pressed in my head. But the briefing is completed, and this court can set oral arguments. If it wants to hear it in the criminal case, we've asked for argument. It can set argument at its convenience, and I will be there. And I'm sure the U.S. attorney will be there as well. And so the cases can be resolved with dispatch. And so I don't think there's an efficiency argument to be made that consolidation isn't appropriate. Those are the main points I wanted to make. And with that, I'd like to just reserve what time I have left. Of course, I'm happy to answer whatever questions this court has. That's fine. Thank you. Judge Pooler, any questions? I would like to know about these other cases that are pending. Are they in the Southern District of New York? Yes, Your Honor. Both Court 1 and Court 2 are in the Southern District of New York. Is the subject matter similar to this case? I mean, it's hard to make a decision. You're saying, trust me, this is all relevant. But you have to give me a little more than that. Could you do that? Without violating whatever order you're under? I'm not sure I can, Your Honor, other than to say what I've said, which is that Court 1 authorized the issuance of the subpoena at the request of the government to obtain material. Court 2 declined a similar request from the government. The material was subject to a protective order that the government sought through the subpoena. And beyond that, I don't think I can disclose any more. And I apologize for that, but that's why we're in the position we're in. Do that as it may. These cases don't have a common factual rest. One is a civil case. One is a criminal case. There are different stages of procedure. It would be like putting someone else's leg on a different body. They don't consolidate well in my point of view. Tell me why I'm wrong. Your Honor, I do think I can say that the issues or the cases before Court 1 and Court 2 are related to the criminal case and the civil case. I can say that. I will also say beyond that that the civil case, I would disagree that the civil case 20-2413 and the criminal case 20-3061 are not related. What we do know and what I can say is that two of the six charges against Ms. Maxwell arise directly from the civil case because they are based on her deposition testimony. Count 5 is an allegation of perjury as to the April 2016 deposition. And Count 6 is an allegation of perjury as to the July 2016 deposition. So I do think the cases are related for that reason. Beyond that, I can't say. And I certainly understand the Court's frustration. I'm frustrated as well. But beyond that, I can't say much more. Counsel, tell me why you think we have jurisdiction to consider this interlocutory appeal. I think this Court has jurisdiction under the collateral order doctrine. I think there are a number of cases, certainly in the civil context, where this Court and other courts across the country have entertained appeals of orders denying modification of protected orders. We've identified those cases in our briefing. I don't think the fact that this is a criminal case changes the inquiry at all. I think it actually helps us in that it shows the relief we're asking for, which is the ability to share relevant information with a judge, is separable from the merits. It has nothing to do with the merits. We haven't asked to stay the criminal case. We're not asking to stay the criminal case. A post-trial criminal appeal will do no good for the relief we are seeking because, at that point, the deposition material will be released. Judge Prescott will have largely, if not entirely, completed the unsealing process. And while the category of cases that are appealable under the collateral order doctrine are narrow, and I don't disagree with that, we think we fit within the three criteria that are necessary to show collateral order jurisdiction. Alternatively, this Court can exercise mandamus review if it disagrees with me on that. And I think mandamus review would be appropriate here, basically, for the same reasons as given. The last point I make is I don't think this Court has to decide the jurisdictional questions before it decides the motion to consolidate. The motion to consolidate is a procedural matter within the discretion of this Court. And so the Court could decide to grant the motion to consolidate and then address the jurisdiction issues that are present in the criminal case. That seems a little backwards to me, to accept jurisdiction before we look at it. That doesn't seem to be the way we do things around here. Your Honor, I also don't think this Court could fairly decide whether jurisdiction exists without looking at what's at issue in the criminal case. So I certainly don't think a Court could only review the redacted materials that we've submitted in the context of the civil appeal and decide there's no jurisdiction over Judge Nathan's order because I don't think the Court would have the full picture of the material that's at issue. So whichever panel, be it this panel or another panel, consolidated or not, besides whether there's jurisdiction in the criminal case, I think it's going to have to look at the unredacted material in its entirety. So I just don't see a way around that. All right, thank you. I have no further questions, Judge Cabranas. Thank you very much. Judge Rodgers? Yes, I have a few questions. The fact that they don't pertain to jurisdiction should not be – no conclusion should be drawn by that. You were just to consolidate these cases. What more do you gain by consolidation that you're not getting from us hearing the cases in tandem? Your Honor, I'm not sure I gain. I think it's the same panel. We're to decide both cases. Well, we are. We are the same panel. So why do you need consolidation? So, Your Honor, maybe I misunderstood the posture of this argument. I was under the impression that the Court, because the motion to consolidate was filed in both cases, but the first filed case was the civil case, that the panel deciding the civil case would decide whether to grant the motion to consolidate. And it was not clear to me that this panel of the Court is also assigned to the merits of the civil case. I see. I see. Yes. Okay. Okay. With respect to the decision of Judge Nathan that you're challenging, our standard review is what? It's assuming we have jurisdiction. It's an abuse of discretion review, Your Honor. Okay. Now, how do you show abuse of discretion here? What satisfies that standard? In this case, the standard is satisfied on the merits because of the nature of the relief we're requesting. And what I mean by that is most modification of protective order cases that I've read in doing my research had to do, for example, I can't remember the name of the case, Capra, I believe is the one the government relied on mostly from the Second Circuit, had to do with modifying a protective order, a motion filed by the defendant, so the defendant could use confidential material in the public interest. That was kind of vaguely defined in that case, but presumably publicly released material. That's not what we're asking for here. We're asking to share information under seal with Judge Presta. We don't intend to make it public consistent with our position that the deposition material should not be unsealed. I understand that, but I'm not sure I understand why you can show that Judge Nathan's actions are either erroneous as a matter of law, erroneous as a matter of fact, or outside the realm of options that's available to her here. So I understand the court's question. My point, without being able to delve into the merits too much, because of the nature of the protective order and the fact that it's a public oral argument, when I'm not allowed to disclose things sealed or shielded from public disclosure by the protective order is, in our briefing we have laid out the many reasons we think Judge Presta deserves and would want to know the information we have asked to share under seal. And given the warrant, One of the things Judge Nathan said in rejecting the argument was that she thought that the information that was pertinent to Judge Presta's analysis was information you could share. And most obviously that would be, as you've just discussed, that two different judges came to different conclusions about the government's procurement of this material. Wouldn't that let Judge Presta know that there's going to be litigation about this and the outcome should not be assumed? What more does Judge Presta need to know about unsealing other material before her? There are two things that immediately come to mind, Your Honor. The first is the identity of the recipient of the subpoena. That's relevant information, and I can't disclose it now, and I can't tell Judge Presta. The second is the nature of all the information the government received in response to the subpoena. There is more at issue. And it is not, and it represents at the court, as an officer of the court, that it is not as simple as the government issued a subpoena, the recipient complied. And that's about... By virtue of the fact that you would be able to tell Judge Presta that two judges came out differently on it, she knows that. She knows it's not as simple a matter as a party just complied. There's litigation about whether that compliance is warranted. Right? I mean, that much you can tell Judge Presta. We can tell Judge Presta that Court 1 and Court 2 reached different results. Right, which means that she would certainly know that that's going to be a subject of litigation with respect to the use of the material in the criminal case. Yes, Your Honor, I think that's a fair interest. All right. Why does she need to know more than that? For purposes of the challenge to the disclosure in the civil case. Your Honor, it's a refrain, and I am not trying to be evasive, and I apologize. But the name of the recipient, the identity of the recipient, is a material fact. I'm sorry to press you, but I'm not sure I understand this. I mean, you've got in front of Judge Presta a judicial material. You've got a protective order that says if a party comes and wants to have that disclosed, the burden is on your client to show why it shouldn't be disclosed. Assuming arguendo, I mean, you can argue to Judge Presta, urge her to find that the disclosure to the government is not legally supported. How does that alter Judge Presta's inquiry into whether she should unseal the material? Because, Your Honor, it's not just that issue of whether the material was properly given to the government in the first instance, about which there is a very valid debate, as we've seen, because court one went one way and court two went another way. There's also an issue about what's going to be unsealed next, and, in fact, whether anything should be unsealed going forward. I'm sorry. Going forward in which case? In the civil case. And so what I mean by that is Judge Presta's next point to consider whether Ms. Maxwell's July 2016 deposition should be unsealed, along with other material, and then there'll be more beyond that. And this information that we seek to share is relevant not just to the April deposition, which is on appeal right now, but is relevant to the July deposition and everything going forward, and is also relevant to whether the process should be stayed pending the resolution of the criminal case. And we know other judges in the Southern District have granted stays of civil cases involving the Epstein estate and Ms. Maxwell because of the pending criminal case, and we cannot make a fair argument to Judge Presta without the ability to share with her the information we think she needs. She may disagree with us ultimately, but we're just asking for the opportunity to make that argument. And just to refresh my memory, my last question, did you argue to Judge Nathan that it was particularly relevant to disclose the identity of the recipient of the subpoena? I don't remember seeing that. Did you? Yes, we did, Your Honor. Okay. Where would I find that? In appendix volume, there's just one appendix in the criminal case. In the motion papers to Judge Nathan? In the motion papers to Judge Nathan and the reply, both letters from Mr. Pagliuca. Okay. Thank you. Thank you, Judge Cabranes. Yes. Counsel, help me with this because the questions that Judge Pula and Judge Rajee have asked have elicited responses which I find a little confusing. So we're talking about two different courts, one that authorizes the subpoena and one which denies the subpoena. Are we entitled to know which courts? What was court number one and court number two? There's supposed to be some theory that we're not entitled to know that. So, Your Honor, my understanding of Judge Nathan's order, which denied our request to modify the protective order, is that I cannot answer that question to you. Our request to Judge Nathan— Wait a minute. Wait a minute. Hold on one second. Are you telling us that Judge Nathan has given you an order that you may not reveal to the Court of Appeals something or other? Is that what you're telling us? I rather doubt that that is accurate. That is my understanding of the order. I believe we can tell Judge Preska, court one and court two, and identify them to Judge Preska. I'm pulling up her order, Judge Nathan's order, right now. Hold on a second. Just hold on a second. Yeah, you can keep doing that. That's fine. Let me proceed with where I'm heading with all of this. Why is it not possible for you to submit under seal to this panel, in this case, a letter which identifies court number one and court number two and anything else that you think is relevant to those subpoenas? What, if anything, is keeping you from doing that? Because we can, to the panel here in the criminal case, that's 20-3061, in the context of the panel deciding that case, we can reveal under seal, and we have revealed under seal, the information I'm requesting that we be allowed to share with Judge Preska. But the criminal protective order says that we cannot use anything we learned from discovery in the criminal case or a civil case. And so that means I can't share with the panel of this court, in its capacity, as the panel deciding the civil case, 20-2413, the information you're asking about. But you have told us in the criminal case. That is correct. I have told the court in the criminal case. Okay. I'm sorry to interrupt you. That's all right. Go ahead. Go ahead. No, I mean, we have that information. It's just that we have it in the criminal file, in the criminal appeal, or the appeal of the – it's part of your papers in the criminal case from Judge Nathan, right? It is, Your Honor. Everything unredacted. So this panel knows the facts that you're – the facts you're arguing. You're saying you can't tell Judge Preska, you can't mention them if we're on the civil case number, but you have told us in the criminal case number. That is correct, Your Honor. And until this argument, I was not aware that this panel was also going to decide the criminal case. I was under the impression that this panel, in its civil capacity, was going to decide the motion to consolidate. If that makes sense. I know these are thin lines. Well, I'm not sure – I'll leave it to Judge Cabranes what we've decided we're deciding besides consolidation today. But the fact of the matter is we have the papers that disclose that information. I think that's right, Your Honor. Let me – let me come at this another way to make sure that we're all suitably informed. Is there anything – is there something that you know and or Judge Nathan knows that you have not been able to share with the Court of Appeals? And forget our capacity. We have both cases. We're talking about the Court of Appeals, which for these purposes is this panel. Is there anything that you or Judge Nathan know that you have not been able to share with us? Your Honor, we have shared with you, putting capacity aside, we have shared with you the nature of the information that's at issue and the identity of the recipient. We have not provided all of the actual material because it is voluminous. Right. And this voluminous material, how would it be helpful, if at all, to us in addressing the issues in the civil appeal or in the criminal appeal? It would show the interrelationship and, frankly, overlap of the cases, and it would show the basis and origin of the criminal case. And you'll have to help me refresh my recollection regarding the record, but Courts Number 1 and 2, are they both in our circuit? They are, Your Honor. They're both in the Southern District. As well as Judge Prescott. Right. And Judge Nathan. As is Judge Nathan. So to me, there is no problem here, but we would like to know and we'll discuss that in due course. In other words, all of these judges are subject to the jurisdiction of this Court of Appeal. That is correct, Your Honor. And therefore, this Court of Appeal, were it to issue orders with respect to these matters, would bind all of the relevant judges at this time. Correct. Okay. Judge Pooler, any further questions on your end? No, thank you. Judge Raji? Nothing further, thank you. Okay, we'll hear from the Governor. Good afternoon. May it please the Court. My name is Laura Pomerance, and I'm an Assistant United States Attorney for the Southern District of New York. I represent the United States on appeal, and I also represent the United States in the proceedings below. Elaine Maxwell's appeal of Judge Nathan's denial of her request to modify the protective order is without merit. As an initial matter, this Court lacks jurisdiction to hear this appeal. The order at issue here is not a final judgment that terminates the litigation. As such, the final judgment rule precludes jurisdiction over her appeal of Judge Nathan's order. Maxwell fails to explain how the District Court's order falls within the small class of decisions that constitute immediately appealable collateral orders. The rights implicated by the order, namely the use of pretrial discovery materials, do not justify expanding the limited collateral order exception, which the Supreme Court has interpreted with the utmost strictness. This Court has concluded that it lacks jurisdiction when considering interlocutory appeals from rulings on protective orders governing a criminal-dependent use of discovery materials. And it's also for that reason that consolidation is not proper here. For this Court to properly consolidate Maxwell's appeals in her civil and criminal cases, there must be an independent basis for appellate jurisdiction in each appeal. In other words, each of the matters to be consolidated must be within the jurisdiction of this Court. Because Judge Nathan's order is not appealable at this stage, this Court should not consolidate the appeals and permit Maxwell to bootstrap her appeal in the criminal case into her appeal in the civil case so that this Court addresses the merits. As I mentioned, this Court should dismiss Maxwell's appeal for lack of appellate jurisdiction. The District Court's order denying modification of the protective order in the ongoing criminal case is not appealable until after a final judgment is entered. And the exceptions to the final judgment rule in criminal cases are rare, and this is for good reason, as this Court and the Supreme Court have recognized to permit such piecemeal appellate review of trial court decisions, which do not terminate the litigation, is particularly damaging in criminal cases. Permitting collateral appeal in these circumstances would unduly delay resolution of District Court litigation and needlessly burden courts of appeals. And this should not be the rare case in which this Court finds that Judge Nathan's order belongs in the small class of decisions that constitute immediately appealable collateral orders. The Supreme Court, as I mentioned, has interpreted the collateral order exception with the utmost strictness and has only found four types of pretrial orders that satisfy the exception. And Maxwell concedes in her papers that her appeal does not concern one of those four types of pretrial orders. And her appeal is not analogous to the types of interlocutory orders that involve a constitutional right not to be tried. The rights being asserted by Maxwell are not a right not to be tried. It's more concerning a right not to be tried in certain circumstances. And she fails to offer a basis for expanding the four categories, particularly as it relates to the rights implicated by the order, namely the use of pretrial discovery materials. And this Court has concluded that it lacks jurisdiction when considering interlocutory appeals from rulings on protective orders governing a defendant's use of discovery materials in a criminal case. And she cites no case in which this Court has found jurisdiction over an interlocutory appeal of a protective order regulating use of criminal discovery materials provided during litigation. Maxwell asks this Court to engage in individualized jurisdictional inquiry based on particular facts, but this Court is instead supposed to focus on the category to which the claim belongs, which, as I mentioned, because it involves pretrial discovery materials, is generally unreviewable on interlocutory appeal. It's not in dispute that to fall within the small pack of decisions that are immediately appealable, collateral orders, the decision must meet all three prongs of the test that's outlined in the government's papers. And the district court's decision regarding the protective order does not meet, as an initial matter, does not meet the third criterion. The decision regarding the protective order will be reviewable on appeal after final judgment. The question is whether delaying the review until entry of a final judgment would imperil a substantial public interest. And as a general matter, availability of post-judgment relief through reversal or vacatur of conviction, if warranted, would protect whatever right a defendant claims was abridged by a pretrial decision. Maxwell has not articulated any serious injury that she will suffer if the Court dismisses this appeal. To the extent that she claims that unsealing filings in a civil case may result in unfair pretrial publicity in a criminal case, that concern can be reviewed by this Court on appeal from a final judgment. There are also steps that the district court can take to ensure a fair trial, for example, through Wadhir and other steps that the Court can take. And if this Court were to determine that a jury was biased based on disclosure of material in a civil case, and that such material would not have been unsealed had Judge Nathan permitted modification of the protective order, then vacatur of conviction, if warranted, would vindicate her rights. To the extent that Maxwell complains that her inability to use the criminal discovery materials in civil matters may result in premature unsealing and therefore a claim, a government claim, of inevitable discovery, she can again present arguments before the district court judge as to why the materials could not have been unsealed had Judge Nathan permitted modification. And if those arguments are rejected, she can raise any such issues on appeal. But at bottom, Maxwell has still not explained how her desire to prevent the government from making any inevitable discovery argument has any bearing on Judge Preston's First Amendment analysis. If purportedly ill-gotten evidence is admitted at Maxwell's trial and a conviction results, appellate review will be available at that point. And should this Court then determine that post-judgment relief is warranted, it may order whatever remedies are necessary to ensure that her legitimate interests are fully preserved. And what's more, under Judge Nathan's order for denying the modification of the protective order, she in fact granted Maxwell the ability to share basic facts that she can use to argue to Judge Preston and any other judicial officer. She claims that she's asking for a fair opportunity to present arguments to the Court, and the order, the protective order, provides her with that relief. And in terms of... I'll turn to the issue of consolidation. In preparing for oral arguments, the government took a closer look at the rules and the law regarding consolidation of appeals. And Rule 3B of the Federal Rules of Appellate Procedure outlines the rule for consolidating appeals, and that rule concerns multiple appeals taken from a single-district court case. That rule does not provide for or contemplate consolidation of appeals in different court cases, particularly one civil and one criminal. And it's clear that for consolidation to be proper, there must be an independent basis for appellate jurisdiction in each appeal. There's a Ninth Circuit decision on this that's particularly helpful. It's United States versus the State of Washington, 573 F2D 1121. And in that decision, the Ninth Circuit rejected the State of Washington's attempt to consolidate a non-appealable order with other appeals that were properly before the circuit. And here, this involves multiple... You have one minute left. Thank you. And so there is no independent basis for jurisdiction for the appeal of Judge Nathan's order denying the modification of the criminal protective order, and so consolidation is not proper. Maxwell has not cited a case in this posture in which consolidation was granted, and she has not cited any law or rule to support her position. This court has explained that consolidation is not a given or an automatic, and in assessing consolidation of appeals, a court should consider equity, it should consider judicial economy and whether justice is served by consolidation. This case, we're talking about two appeals involving distinct orders issued by different judges in different cases in different procedural postures. There are separate issues, there are separate records, there are separate interests. And consolidation would merely increase the complexity of the appeal. The government is not a party to the appeal in the civil case, which involves questions of public access to judicial records, whereas the criminal matter involves the denial of a modification of a protective order to share information in civil matters. And so consolidation of the appeals would merge the records, blur the line between the two cases, and would set a precedent for combining civil and criminal cases on appeal, which violates Rule 3B of the Federal Rules of Appellate Procedure. Thank you. Thank you. Judge Pooler, do you have any questions for the governor? I do have a couple. Hello, counsel. You know who the recipient is, don't you? That's correct, Your Honor. Because you served the subpoena, correct? That's correct. So you know which is Court 1 and which is Court 2 as well, right? Yes, Your Honor. You know the other materials that counsel alluded to previously that are in the record, do you know what he's referring to that must be told to Judge Breska? Do you know what he's referring to? I believe I do, Your Honor, but as we've noted in our papers, it's not clear that he... Maxwell has failed to make clear the connection between the way in which the government obtains materials, what those materials are, and the connection to any First Amendment unsealing analysis. You are totally unpersuaded by Maxwell's argument that releasing this material will hurt our criminal trial. Is that correct? That is correct, Your Honor. The United States Attorney's Office for the Southern District of New York has dealt with high-profile cases for many years and has given defendants fair trials and impartial juries for years, and there's no reason to suspect that this would be any different. Could you tell me the purpose in keeping the name of the recipient secret and the courts, Courts 1 and 2, their decisions?  from the Court of Appeals? I'm sorry, Your Honor. If you could just repeat the question. Yes. Could you tell me the purpose in keeping the name of the recipient and Court 1 and Court 2 from the Court of Appeals who is deciding a little piece of both cases right now? Could you tell me the purpose in keeping it secret from us? Your Honor, it's not a secret from the Court of Appeals. It's all provided in the appendix. You applied ex parte to both courts, correct? That is correct. And of those ex parte applications, in the materials before us? I believe so, Your Honor. I'm sorry, Your Honor. No, continue. I was simply going to say that, again, the government is trained to understand the connection between those materials and the First Amendment and ceiling analysis, and that is what Judge Nathan found in her denial of the protective order. The standard is whether there is good cause to modify the protective order, and Judge Nathan found that Maxwell had failed to show good cause and simply offered speculative reasons that didn't explain the connection between their requests. And the government's concern is that if the civil litigants have access to field criminal discovery, that could create problems alerting targets of the government's investigation to scope of investigation, as well as investigative techniques and the like. I guess Ms. Maxwell believes that the materials that the grand jury either sought and got or is still seeking would somehow help her in her defense in this case. Isn't that true? Your Honor, when you say in this case, you're referring to the... The criminal case. Yes, Your Honor. I think that the materials, she has been granted explicit permission to provide the information, basic information about the way in which the government obtained the materials to any judicial officers in connection with her civil cases. And so it remains unclear why she would need to provide the materials themselves. And she has been afforded the relief that she claims to seek. And so this underscores the government's concerns that what she's simply seeking to do is litigate the government's investigative techniques in a forum in which the government is not a party. Yeah, that's what I can't understand. She can use the materials because she's had access to all these materials. She could use them as part of her criminal defense, correct? Correct. Whatever she's received from the government, any material. But you worry about her using it in a civil case because it would compromise your investigation. Is that correct? Yeah, that's part of the reason, Your Honor. And there's also no precedent for amending protective orders to allow for the use of criminal discovery in non-criminal cases, including civil matters and the like. And so this would be, she has cited no precedent for the relief that she seeks. And there is a reason that the lines should not be blurred, like as I mentioned, in terms of creating issues in terms of the government's ongoing investigation. And creating potentially problematic precedent. Thank you, counsel. I have no further questions. Thank you. Judge Rodney? Yes, I want to be sure I understand what the government's concern here is with granting Ms. Maxwell's request in front of Judge Nathan. The materials would be available, would be made available to Judge Preska under SEAL. But then they would also have to be made available to the move-ins, to the press move-ins under SEAL. Is that your concern? Because I assume you're not particularly concerned about them being disclosed to Judge Preska. That's correct, Your Honor. The government is certainly not suggesting that providing documents to Judge Preska would compromise the ongoing investigation. I mean, if they could just be given to Judge Preska, that would be one thing. But if she's going to make a ruling based on that material, they also have to be given to the move-ins, to counsel for the press here, right? So am I right that that's the concern? Not sharing it with the judicial officer, but because the judicial officer can't rule on materials she gets ex-party, they'd also have to be given to the adverse party. Is that right? Yes, that's right, Your Honor. Part of the issue is providing the materials to the other litigants, as you've noted. Okay. All right, thank you. I have nothing further, Judge Cabranes. Let me try to replay, this is Judge Cabranes. I just want to turn again to court number one, court number two, and all of that. The government, I gather, wound up before court number one and court number two by operation of some wheel, is that it? Some distribution of cases by the Southern District of New York? Ms. Pomerantz? Yes, Your Honor. The government ended up before those courts in part because the, and I'm straining a little in my explanation, but the applications, the applications were made to, were made to certain courts before Judge Presto was assigned to the matter. Before Judge Presto or Judge Nathan? Excuse me, Judge Presto, yes. Do you mean Judge Presto or Judge Nathan? No, before Judge Presto, right? Because she succeeded to the case after Judge Van, I'm sorry, who had the case originally? Judge Sweet. Judge Sweet, I apologize, I apologize. So there was a period when it was not yet assigned to Judge Presto and then you had to go to other courts, is that what you're telling us? Yes, that's correct. The entire litigation that Maxwell is pointing to took place months before Judge Presto was assigned to handle Dufresne versus Maxwell. And how is it that you wound up in front of two judicial officers? The court, court one took the matter on after Judge Sweet's passing and court two handled the matter in connection with a pending case. And you got the adverse ruling first and you disclosed that to the second court, am I right in understanding that? No, the court- The other way around? No. Court one granted the government's application first, then the government provided a copy of court one's decision to court two and then court two denied the government's application. And why did you need to go before two judges to get the materials? Was it for two different pieces of litigation or what? It's in two different pieces of litigation, yes. I'm not sure I completely understand that because of course the government pursues this material for purposes of its criminal investigations. So are you saying there were two separate criminal investigations? There were two civil cases. Two civil cases? Two civil cases in which what? You were trying to get documents that pertained to those civil cases or what? That's correct. So one judge gave it to you and the other judge did not. Are we talking about the same material or different material? So the government made two applications, one was granted and one was denied. I understand that. I'm trying to figure out why you needed to make two applications. There are two different civil cases, two pieces of litigation that are at issue. And so the government made two applications in connection with its investigation. And if I could insinuate myself here, now we have two civil proceedings in which the government is interested, but somehow this has something to do with the criminal proceeding that you've begun against Ms. Maxwell. Is that right? I'm sorry, Judge, could you please repeat your question? Yes, I'm just trying to follow up on the questions asked by Judge Raji and by Judge Pooler. We now know, for the purposes of this argument, that in this criminal appeal, there is an issue that arises with respect to a court number one and a court number two. Judge Raji quite understandably wondered why you had to go to two different judges. And you've told us, if I understand correctly, that you did so because these were two separate civil matters in which the government was engaged. Is that correct? That's correct. The government sought materials in connection with two different civil cases. May I interrupt Judge Cabranes? Judge Cabranes just asked you if the government was engaged. Now, as a movant, as a party, I mean, my understanding was that you were just a movant in these cases. You weren't a party. Did I misunderstand the records that's been given to us? You did not misunderstand the record. So you're engaged in the sense that you made motions in these two cases to get information. That's correct, Your Honor. Okay. I'm sorry, Judge Cabranes. I just thought that we needed to be clear on what their role was. No, that's perfectly fine. Very good. So now, help us understand this a little bit more, at least help me understand it. Why are court number one and court number two relevant at this point in the criminal matter? That is, why isn't all of this, as a practical matter, subject to Judge Mason's jurisdiction and authority? Your Honor, that is the government's position. The government sought these materials from two different civil cases. The government obtained materials. They are subject to Judge Mason right now. In that respect, court number one and court number two are out of this as far as the Court of Appeals is concerned because all of those matters are now before Judge Mason. In effect, as a result of these various maneuvers, court number one and court number two, whatever it is they did and whatever they turned over to the government, all of that is now before Judge Mason. Is that right? That is correct. And that is something we anticipate we will litigate before Judge Mason. Right. Now, this is a simple question. Now that we, now that you've turned over, you've turned over certain material. Is that right? That you obtained pursuant to that subpoena before court number one. Is that right? That is correct. And you've turned that over to Ms. Maxwell's counsel under a protective order, correct? That is correct. Now, they can use that material presumably in defense of Ms. Maxwell. In connection with her criminal case, yes. And forgetting for the moment civil versus criminal and the different capacities in which people surface in this case, what's the big deal about having Maxwell's counsel who has these materials in order to defend his client in the criminal case? You think there's something wrong with his use of that material in the civil case? Yeah. From abstract reliance on particular rules of appellate procedure. Why is that a problem for you in the pursuit of this prosecution? Why do you care? Well, as Judge Raji pointed out or in her questioning of me, that this is an issue because what would be produced, it's not just a matter of it going to Judge Presta or a different judge. It would have to be produced to the other civil litigants in the matter. And the concern is that if civil litigants get access to sealed criminal discovery, that could create problems for the government's ongoing investigations. It could also alert targets, as I've mentioned, to the scope of an investigation, government investigative techniques and evidence gathered. Yes. Yes, that may be true as a general proposition or in other cases. I'm asking you about this case. Now, in this case, certain material has been given over to Maxwell's counsel under a protective order. That protective order precludes him from use of that material in a civil action. Is there some way that his interests or Maxwell's interests can be accommodated by submitting these materials to Judge Presta under seal for her review and consideration? That is, why shouldn't Judge Presta, as a judicial officer in charge of the civil matters, why is it impossible to shape a protective order or an arrangement under which the government makes this material available as it has already? It has already made this available to Maxwell's counsel. Some arrangement under which Maxwell's counsel can bring it to the attention of Judge Presta for whatever reason he thinks appropriate. I think I'm missing something here, I'm sure, and I seek your help. Your Honor, the government's position is that Judge Mason's order provides him with that relief, that Judge Mason accommodated Maxwell in her order by giving her explicit permission to tell Judge Presta what he needs to tell her. And if Judge Presta, in terms of the provision of the materials, if Judge Presta relies on it, then the other parties would need to get a copy of it. And that is the concern that the government has been describing for the court. Okay, fine. All right. May I ask a question, Judge Cabranes? Please. If Judge Nathan has allowed the sharing of the information with Judge Presta, what is it that you oppose here? Your Honor, the issue here is that to modify the protective order, Maxwell needs to show good cause. She has failed to show good cause. I understand, but that's a theoretical thing. You're saying that Judge Nathan said, go ahead and tell Judge Presta anything you need to tell her. Is that what you just told Judge Cabranes? Not anything, but that Judge Nathan provided, that Judge Nathan granted Maxwell leave to provide a certain information under seal that she deemed relevant to Maxwell's request. Is there anything else that Maxwell is seeking that Judge Nathan did not allow her to share with Judge Presta, in your view? My understanding is that she's also seeking to provide the underlying materials themselves, and that raises concerns to the government. Oh, okay, yeah. So what Judge Nathan said is you can give Judge Presta a summary, but you can't give the materials. Is that right? Yes, that is correct, Your Honor. That is my understanding of Judge Nathan's order, that it gives explicit permission to provide certain information. It does not modify the protective order in that it does not allow her to turn over the materials, but gives her permission to provide information relevant to the claims that she says she would like to make. Now, are the materials the materials that were subpoenaed by the government, or are we talking about something beyond that? It's the former, Your Honor. It's the former. Without getting into the particulars, is there a certain circularity here to the position the government is taking? I don't believe so, Your Honor. I think that our position has been based in the law, and Judge Nathan granted Maxwell the release that she sought, which from our position makes her appeal moot. As I noted at the outset, that this court doesn't have jurisdiction, and she declined to address this issue on the merits because of the lack of jurisdiction at issue here. Well, let me try to give you a hypothetical here. Supposing the government subpoenas material from Party A, who is involved in litigation of some sort, and that's how the materials were obtained by Party A. Then the government gets them, gets a protective order on those materials in another case involving, we'll say, Ms. Maxwell. Ms. Maxwell says, I want to share them with a party, with a judge and all that. She can't take the materials and share them with the court that would be involved in Party A's litigation? I mean, that's what seems circular here. As contemplated by, the protective order precludes that. Yes, but your protective order has to be grounded in some public purpose that you're serving. Otherwise, there's a presumption that criminal proceedings are open, not closed. What's the logic of keeping the materials under seal in a hypothetical situation like that? Your Honor, I think that the issue we're talking about is the point of preventing public disclosure. I'm sorry. It got a little garbled. Please repeat. Sure. My apologies, Your Honor. The issue here is it's about addressing and preventing public disclosure. All right. Judge Cabranes, I don't think I have anything more. Judge Poole, anything more? I have no further questions. Thank you, Judge Cabranes. Thank you very much. So, we have Christopher Pomerantz has reserved some time. Go ahead. I'm sorry. Mr. Muller. Go ahead. Thank you, Your Honor. I have a few minutes. I'd like to start by correcting what I think are some inaccurate facts. The first is in terms of what we can and cannot disclose and whether Judge Nathan gave us the relief we were requesting. The answer to that question is no. We cannot describe the materials, let alone turn them over to Judge Preska under seal. And we cannot identify the recipient of the subpoena. All we can tell Judge Preska is court one and court two and then a recipient received the subpoena and complied with it. The government apparently is no longer concerned about the information going to Judge Preska herself because that won't, and I agree, that would not threaten to undermine any ongoing investigation if it's given to Judge Preska under seal. So that, I take, is no longer an issue. The government's concern seems to be that it will go to the litigants in the civil case. And that's not correct. We have never asked, and there's never been an indication that what would happen is that the material we desire to share with Judge Preska would be turned over to the Miami Herald. This would be protected, filed under seal and protected by the criminal protective order and not available for public disclosure. It would not go to the Miami Herald or any other interveners. As for the risk, the government seems to... Excuse me. I'm sorry, go ahead. If you have one minute left, I'm sorry. You have one minute left. Okay. As for the risk the government sees in it going to the other party in the civil case, this court can look at the material we have supplied in the criminal appeal. It can look at the identity of Court 1 and the civil case number Court 1 is addressing when it considers the government's request for a subpoena. And it can see that the government's concern has no merit. The last thing I'd like to say is that the government's position here seems entirely inconsistent. The government says to this court and to Ms. Maxwell, it has copies of her depositions. We know that from the indictments. The government says that information is confidential under the criminal protective order. And yet it says, the government says it has absolutely no interest in the civil case and whether Ms. Maxwell's depositions are unsealed. And yet the government, on the other hand, thinks those depositions are confidential under the criminal protective order and can't be unsealed. And so I don't understand how the government can take those two different positions unless the government intends, as we argue that they do, and they do not disagree, they intend to argue that once the material is unsealed by Judge Prescott, if it's unsealed, then their circumvention of Martindale and this court's decision in Martindale will have been harmless. And the government says there is no precedent for what we are asking the court to do in terms of accepting jurisdiction over the criminal appeal. Well, we think there's no precedent for how the government has obtained Ms. Maxwell's depositions. And so we fit squarely within the collateral order doctrine. Admittedly, it's a unique case but it fits. And with that, I would ask if there are any other questions from the court. Judge Koehler. I have no further questions. Judge Raji. I'm sorry to say I do have to ask a few questions, Judge Cabranes. If I understood you just now, you're saying that it is known that the sealed documents are Ms. Maxwell's depositions. Is that right? Some of them, Your Honor, and that's just we know that from the indictment. And that's what you want to give to Judge Preska? Not all of it, Your Honor. Well, I'm a little confused because to the extent Judge Preska needs the sealed materials to fully assess your motion on whether or not to preclude the disclosure of Ms. Maxwell's depositions to the Miami Herald, she knows what's in the deposition. I mean, that's been in front of her for a long time. So now I'm very confused as to what it is that Judge Preska doesn't have because of this protective order that would be helpful to her to see your point on the sealing. Let me try to answer it this way, Your Honor, because obviously there is confusion and this argument is difficult to make given the restraints on everyone. If this court looks at the papers we filed before Judge Nathan asking to modify the protective order, we very specifically, I believe it is in footnote 1 of our letter motion, identify the materials we are talking about here. Now, they are voluminous. The depositions, which the government has, are part of those materials, but there's more to it than that. I can't describe what more there is, and we presently cannot tell Judge Preska what more there is, but this court can look at our motion, which is in the sealed appendix in the criminal case, unredacted and particularly footnote 1 and the exhibits we attached to it for a description of what we, the material we are talking about and see some of the material. I think we're back to the problem. I understand that, but I'm sorry, Judge Cabrone. Go ahead. Judge Nathan issued a ruling that she didn't think anything that you asked her to unseal was going to be probative in your case, that you already were able to tell Judge Preska the relevant materials, and to the extent you're saying that was an abuse of discretion, I haven't heard what it is you're not being allowed to tell Judge Preska that is helpful to the fair decision on your motion in front of her. We've now just heard from you that one of the sealed documents is Ms. Maxwell's own deposition. Well, your inability to share that doesn't hurt you because Judge Preska already knows that. So what are you telling us hurts you? Because Judge Nathan said that everything pertinent to your argument in front of Judge Preska, you were able to tell her. A couple of points, Your Honor. My reference to our ability to share that the government has, share with Judge Preska that the government has Ms. Maxwell's depositions, I have that knowledge independent of the criminal case protective order. I have that knowledge from the- I'm aware of that. Right. So my point is I cannot further describe what is at issue because it is under seal. I would like to be able to, Your Honor. And if the court were to order me to, I would tell you right now. You were able to make that argument to this court in the criminal appeal. And I'm asking you, if you don't feel you can say it today with other parties present, where is it in your papers to us? What you're not able to share with Judge Preska that we would see would be relevant to your motion to preserve the order that you have with Ms. Maxwell and with Ms. Driffer in that case. Yes, Your Honor. And I cannot say it with other people present on the phone, but if this court- Just tell us where in your papers to look for it. Presumably you've made the showing in your papers. Yes, Your Honor, we have. And if the court looks in the sealed appendix, which is Appendix Volume 2 in the criminal case, we have our motion, letter motion to modify the protective order and our reply. And in those documents, in those two pleadings, we, in unredacted form, describe everything. And footnote one in particular of our letter motion describes all the material we're talking about. Right. Those are the submissions you gave to Judge Nathan, right? Yes. And she ruled against you. That is correct. Where in your papers to us do you explain what documents, among the ones you want to, where do you explain to us why that's an abuse of discretion with respect to particularly what you weren't able to show Judge Presta? Your Honor, we make that argument in our opening brief and our reply brief. In our opening brief- Right, but summarily, and I'm not sure I see where you cite it to, we're not able to show Judge Presta X or Y or Z. We can't make the following arguments. Is that anywhere in your submission? I believe it is, Your Honor. In the opening brief, I would point you to, for example, just the argument section, which is beginning on page 23 and continues to page 33. Well, I will certainly look at it again. Thank you. I appreciate that. Thank you. The other thing is you said that you have never sought to turn it over to the Miami Herald, and I understand that, but, I mean, it's an adversary system. If you turn it over to Judge Presta, what's going to be your argument for why it doesn't have to be turned over to your adversary? Your Honor, I mean, it's protected by the criminal protective order, so just as the material in the civil case that is currently under seal or protected by the criminal order. But why should Judge Presta accept a filing that's ex parte in the case? What's your argument to Judge Presta for, I want a submitted ex parte, and you should take it that way? The Miami Herald is going to oppose that. I just think it's disingenuous to tell us there's no risk here, that it will go beyond Judge Presta, and I'm trying to see if I'm correct in thinking that or if I'm not. Help me out. Your Honor, if this court looks at who the subpoena recipient is, the court will understand. I think I know who the recipient is, and I'm still not sure why you think the Miami Herald will accept that being reviewed ex parte. Your Honor. Is that discussed anywhere in your brief? Well, Your Honor, until this oral argument, I was not under the impression at all that the government was worried that this material would go to the Miami Herald. That was never an issue before Judge Nathan. We never argued about it. We never requested that it go to the Miami Herald. So until this argument was made today, this was not a concern I had ever considered. And I would also say, what is going on in the criminal case is protected by the criminal protective order, and the Miami Herald has not intervened or moved for discovery, or release, I should say, of material in the criminal case. And so I just don't see a scenario in which that happens in the civil case. All right. Thank you. Thank you, Judge Kiforanis. Thank you. And thank you, Judge Pooler. If you have no further questions, we'll take this matter under submission. I have no further questions. Excuse me? I said I have no further questions. Thank you. Okay. So I'll ask the clerk to close court. I thank counsel. Court is adjourned.